UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 25-10188-357 |
| TRAVIS LEE PARSON and CASEY ANN PARSON, | Chapter 12 |
| | Related to Doc. 69 |
| Debtors. | |

**SUPPLEMENTAL OPINION AND ORDER
ON MOTION TO ALTER OR AMEND**

The United States Small Business Administration (the "SBA") timely filed its Motion Pursuant to Fed. R. Bankr. P. 9023(b) to Alter or Amend Judgment on July 29, 2025 (the "Motion"). In the Motion, the SBA requests that I amend my July 23, 2025 memorandum opinion and order denying its motion for adequate protection for failure to meet its burden of proof under Section 363(p)(2) of the Bankruptcy Code. For the reasons that follow, I decline to do so.

The facts and procedural history of this case are outlined in the prior opinion, and I assume familiarity with them.

**I.      Standard for Relief Under Rule 9023**

Federal Rule of Bankruptcy Procedure 9023 provides that Federal Rule of Civil Procedure 59, which allows a party to file a motion to alter or amend a judgment, generally applies in bankruptcy cases. *See* Fed. R. Bankr. P. 9023(a) ("Except as this rule and Rule 3008 provide otherwise, Fed. R. Civ. P. 59 applies in a bankruptcy case."). A court has broad discretion to determine whether to grant a motion to alter or amend a judgment under Rule 59(e). *United States v. Metropolitan St. Louis Sewer District*, 440 F.3d 930, 933 (8th Cir. 2006). Rule 59(e) and Rule 9023 are procedural rules that act as "a tool to serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *In re Robert J. Ambruster, Inc.*, 653 B.R. 461, 468 (Bankr. E.D. Mo. 2023) (cleaned up).

A Rule 59(e) motion may not be used to offer evidence, advance legal theories, or raise arguments which could have been offered, advanced, or raised before judgment was entered.

*Ryan v. Ryan*, 889 F.3d 499, 507 (8th Cir. 2018); *see also Nordgren v. Hennepin County*, 96 F.4th 1072, 1077 (8th Cir. 2024) (noting that Rule 59(e) "cannot be used as a vehicle to tender new legal theories, raise arguments that could have been made prior to the issuance of judgment, [or] re-argue the merits of claims, … without specifically identifying for the court a manifest error of law or fact that needs correcting").

The SBA offers no new evidence and does not identify any errors of fact. It asserts only that the prior opinion contains errors of law. A manifest error of law "is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Robert J. Ambruster, Inc.*, 653 B.R. at 468. The SBA has not identified any controlling authority that interprets Section 363(p)(2) differently than I have. I conclude that there is no manifest error of law in the prior opinion that would justify granting the Motion. Nevertheless, because of the importance of the burden of proof, the relative scarcity of published precedents, and the likelihood that the issue will recur, I will address the SBA's arguments in greater detail than I might otherwise.

## II.     Analysis

In the prior opinion, I interpreted "extent" in Section 363(p)(2) to require a creditor seeking adequate protection to show "the range over which its interest in the collateral extends," which I determined includes showing whether the collateral has value to the creditor. *In re Parson*, No. 25-10188, 2025 WL 2076506, at *3 (Bankr. E.D. Mo. July 23, 2025). The SBA challenges this interpretation on several fronts, but none of them are persuasive.

### A.     The *Noscitur* Canon Does Not Demonstrate that the Court's Interpretation of Section 363(p) Is Erroneous.

The SBA suggests that new case law from the Eighth Circuit should alter my previous interpretation of the statute. In *Zimmer Radio of Mid-Missouri, Inc. v. FCC*, the Eighth Circuit used the canon of *noscitur a sociis*, which counsels that a word should be interpreted in the context of the words that surround it, to construe the word "modify" in Section 202(h) of the Telecommunications Act of 1996. 145 F.4th 828, 860 (8th Cir. 2025). *See also* Pub. L. No. 104-104, § 202(h), 110 Stat. 56 (1996). The Eighth Circuit noted that the *noscitur* canon was "particularly appropriate to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Zimmer*, 145 F.4th at 860 (cleaned up). Thus, it interpreted "modify" narrowly, to allow "the FCC to loosen the regulation [at issue there] but not tighten it," because "modify" was placed next to "repeal" in the statute, and "repeal" meant "'revoke, abolish, annul, … rescind or abrogate.'" *Id.* (quoting *Repeal*, Black's Law Dictionary (6th ed. 1990)).

*Zimmer* is not a new twist on the *noscitur* canon. Rather, it is an example of how to apply the canon to a statute that contains different language than the statute at issue here. The courts have applied the *noscitur* canon in bankruptcy cases for decades in a manner indistinguishable from *Zimmer*. *See, e.g.*, *Neal v. Clark*, 95 U.S. 704, 709 (1877) (interpreting "fraud" in 1867 bankruptcy statute narrowly to correspond with "embezzlement"); *In re Rivas*, 656 B.R. 898, 902-03 (Bankr. E.D. Mo. 2023) (interpreting "representative" in Rule 1004.1 narrowly to correspond with "guardian" and similar terms).

But even if *Zimmer* offered a new take on statutory interpretation, I am not persuaded by the SBA's argument that the *noscitur* canon counsels in favor of a narrower interpretation of "extent" in Section 363(p)(2). The SBA points out that "extent" is placed next to "validity" and "priority" in the statute and suggests that those words "ask easily-determined 'yes or no' questions, suggesting the term 'extent' does not seek to engage in deep, fact-intensive equity inquiries" (Motion at 6). I disagree with the SBA's analysis in two respects.

First, although the validity and priority of interests in property often are straightforward, they may be complicated depending on the circumstances. Some examples illustrate this point.

- A court may need to determine whether a mortgage executed by one spouse relating to property held in a tenancy by the entirety becomes valid when the spouses divorce. *See In re Sabin*, 57 B.R. 352 (Bankr. S.D. Fla. 1985).

- The validity of a security interest may depend on whether a creditor that filed a UCC-1 financing statement but let its interest lapse may re-perfect its interest. *See In re Rancher's Legacy Meat Co.*, 616 B.R. 532 (Bankr. D. Minn. 2020).

- As for priority, a court may need to consider whether an artisan retains its possessory lien, and thus its priority, when it involuntarily loses possession of property but then later regains possession without court approval after the debtor files for bankruptcy. *See In re Borden*, 361 B.R. 489 (B.A.P. 8th Cir. 2007).

- Even more complicated is circular priority, a situation that occurs when Creditor A's interest has priority over Creditor B's interest, Creditor B's interest has priority over Creditor C's interest, and Creditor C's interest has priority over Creditor A's interest. *See In re Stump*, 193 B.R. 261 (Bankr. N.D. Ohio 1995).

Second, the extent of an interest in property usually is not a complicated issue. Most liens in bankruptcy cases are first-priority liens on easily identifiable assets like real property, inventory, and equipment. After a senior creditor shows that its lien is valid and in first position, the debtor is not likely to dispute that the collateral has some value. Thus, for a typical senior creditor, the burden to show the extent of its interest generally is not a heavy one.

In short, validity, priority, and extent are sufficiently parallel that it is not surprising that they are grouped together: in most cases, all three will be straightforward, but occasionally one of them will be more complicated. Construing "extent" to require a junior creditor to show that its collateral has value beyond what is owed to senior lienholders does not ascribe to that term so broad a meaning that it cannot reasonably keep company with validity and priority.

### B. The Plain Meaning of "Extent" Does Not Exclude Considerations of Value.

Interpreting "extent" to mean "range or scope," including whether the collateral has any value to the creditor, is consistent with the plain meaning of "extent." Dictionaries may supply the ordinary meaning for a term without a definition in the Bankruptcy Code. *See Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 69 (2011) (relying on dictionary definitions of the term "applicable"). In non-legal dictionaries, the definition of "extent" has remained much the same since before the Bankruptcy Code was enacted. *Compare Extent*, Webster's Third New International Dictionary of the English Language (1971), *with Extent*, Merriam-Webster (last updated Sept. 1, 2025), https://www.merriam-webster.com/dictionary/extent. "Extent" is defined as "the range … over which something extends: scope" and "the point or degree to which something extends." *Extent*, Webster's Third New International Dictionary of the English Language (1971). *See also Extent*, The Random House Dictionary of the English Language (1966) ("[T]he space or degree to which a thing extends; length, area, volume, or scope."); *Extent*, The American College Dictionary (1970) ("[T]he space or degree to which a thing extends; length, area, or volume … scope.").

The "range or scope" of a creditor's interest in collateral is not limited to identifying the categories or items of collateral that are covered by a lien. Such a narrow interpretation does not account for the possible existence of senior liens, which are key to the adequate-protection question because a creditor that does not have a secured claim under Section 506(a) is not entitled to adequate protection. In fact, Section 506(a)(1) uses the phrase "to the *extent* of the *value* of such creditor's interest," which suggests that value is a relevant consideration in determining the extent of a secured claim. 11 U.S.C. § 506(a)(1) (emphasis added). *See generally Wright v. Union Central Life Ins. Co.*, 311 U.S. 273, 278 (1940) (holding that redemption provision in bankruptcy legislation was constitutional because rights of secured creditors were

safeguarded "to the extent of the value of the property"); *In re Briggs Transportation Co.*, 780 F.2d 1339, 1342 (8th Cir. 1985) (explaining that adequate protection protects secured creditors "to the extent of the value of their property").

The SBA argues that Black's Law Dictionary defined "extent" as "amount" in the edition that would have been in use when the Bankruptcy Code was enacted in 1978, and that "amount" merely means the quantity of money the debtor owes on the debt that is secured by the lien. *See Extent*, Black's Law Dictionary (4th ed. 1968). But even assuming that "amount" is the correct meaning of "extent," the "amount" of an interest in property is ambiguous in the abstract and becomes clear only in the context of the statute.

Does "amount" mean the amount of the debt? This appears to be what the courts meant in the cases that the SBA cites. *See Minnesota, Department of Revenue v. United States*, 184 F.3d 725, 727-28 (8th Cir. 1999) (dispute over priority of tax liens); *Hex Stone Inc. v. JRC Marine, LLC*, No. 19-24, 2019 WL 13104817, at *1 (E.D. Mo. Aug. 7, 2019) (motion to transfer case); *Fortner v. Price*, No. 16-279, 2017 WL 1177712, at *3 (E.D. Mo. Mar. 30, 2017) (question of subject-matter jurisdiction). *See also United States v. City of New Britain*, 347 U.S. 81, 82, 84 (1954) (priority of liens on foreclosure proceeds). But none of these cases are bankruptcy cases, and so they do not tell us what "amount" (or "extent") means in the context of Section 363(p). When interpreting statutes, courts consider statutory context and purpose and do not read words in isolation. *See, e.g.*, *Ransom*, 562 U.S. at 74; *Truck Ins. Exchange v. Kaiser Gypsum Co.*, 602 U.S. 268, 279 (2024); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 244-46 (2010); *Dubin v. United States*, 599 U.S. 110, 120 (2023); *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 523 (2018); *Zimmer*, 145 F.4th at 860.

Looking to the context and purpose of Section 363(p), it is more appropriate to construe "amount" as referring to the amount of the secured claim, as determined by Section 506(a). "[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Department of Treasury*, 489 U.S. 803, 809 (1989). *See also Ransom*, 562 U.S. at 74. Creditors with secured claims under Section 506(a) are the only creditors entitled to adequate protection. The relevant fact for adequate protection, then, is the amount of the secured claim, not the amount of the debt.[1] Thus, Section 363(p)(2), when considered with Section 506(a), requires a creditor to show that its

---

[1] As I discussed in the earlier opinion, the creditor's burden of proof on "extent" does not require it to establish the precise value of its collateral; rather, the creditor need only show that it has a secured claim for purposes of Section 506(a) and thus an interest that must be adequately protected.

interest in the property is secured—that the creditor's interest in property has value—such that it may be entitled to adequate protection.

### C. Placing the Initial Burden of Proof on the Creditor Is Consistent with Rules 3012 and 7001.

The SBA argues that Rule 7001 and cases interpreting that rule support its contention that "extent" does not include the value of a creditor's secured claim. Rule 7001(b) provides that "a proceeding to determine the validity, priority, or extent of a lien" must be brought as an adversary proceeding, and thus it contains the same phrase that is at issue here. But Rule 7001(b) contains an exception for "a proceeding under Rule 3012." Under Rule 3012, a "court may determine the amount of a secured claim under § 506(a)" upon the request of a party in interest. Fed. R. Bankr. P. 3012(a). A Rule 3012 motion is an express exception to Rule 7001(b). There would be no need for such an exception if the value of a creditor's interest in collateral were wholly distinct from the validity, priority, and extent of its lien.

Other exceptions in Rule 7001 illustrate this point. Rule 7001(a) provides that "a proceeding to recover money or property" must be brought as an adversary proceeding, but "except[s] a proceeding to compel the debtor to deliver property to the trustee." Proceedings to compel a debtor to deliver property to the trustee are still "proceedings to recover money or property," but they are carved out of the general rule that such proceedings must be brought via adversary proceeding. Similarly, Rule 7001(d) provides that "a proceeding to revoke or object to a discharge" must be brought as an adversary proceeding, but "except[s] an objection under § 727(a)(8) or (a)(9)." Sections 727(a)(8) and (a)(9) are both grounds to object to a discharge, but the rule permits a party to assert these grounds in a motion. Like these examples, a Rule 3012 motion to determine whether and to what extent a claim is secured under Section 506(a) is expressly excepted from the general rule. This suggests that such a determination is otherwise part of the "validity, priority, or extent" of a lien.

The SBA cites *In re Beard*, 112 B.R. 951 (Bankr. N.D. Ind. 1990), and other older cases to support the proposition that the validity, priority, or extent of a lien is distinct from the issue of valuation. *See Beard*, 112 B.R. at 955 (determining that disputes over the validity, priority, or extent of a lien are "distinguishable from questions concerning … lien valuation"); *Wright v. Commercial Credit Corp.*, 178 B.R. 703, 705 (E.D. Va. 1995) (noting that requests to "determine the extent of a lien or the value of the collateral" are resolved in adversary proceedings); *In re Fuller*, 255 B.R. 300, 305-06 (W.D. Mich. 2000) (categorizing § 506(a) as a "second, albeit unstated, exception" to the requirement that questions involving the validity, priority, or extent of a lien be resolved in an adversary proceeding). When *Beard* was decided in 1990, there was no exception in Rule 7001 for a proceeding under Rule 3012. *See* Fed. R. Bankr. P. 7001(2) (1990) ("An adversary proceeding is … a proceeding … to determine the

validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d)."). The reference to Rule 3012 was not added until 2017, and Rule 3012 was substantially revised at the same time. *See* Fed. R. Bankr. P. 7001(2) (effective Dec. 1, 2017); 3012 (effective Dec. 1, 2017). Thus, *Beard* and the other older cases have little to say about how these rules interact today.

I am also not convinced that my interpretation of "extent" makes Rules 7001(b) and 3012 superfluous, as the SBA contends. It argues that if the extent or value of a lien were determined in an adequate-protection motion, there would be no need to determine the extent of a lien in an adversary proceeding under Rule 7001(b) or the value of the lien in a motion under Rule 3012. But an adequate-protection motion may result in a determination of the value of collateral at the outset of the case regardless of which party has the burden of proof.

In any event, a determination of value for adequate-protection purposes is not binding when it comes to plan confirmation or other matters later in the case, particularly if the decision on adequate protection recognizes that the collateral is changing in value. *See In re O&S Trucking, Inc.*, 529 B.R. 711, 717 (B.A.P. 8th Cir. 2015); 11 U.S.C. § 506(a)(1) ("[V]alue shall be determined in light of the purpose of the valuation."). Rules 7001(b) and 3012 remain relevant as mechanisms to determine the extent of a lien or the value of collateral for purposes other than adequate protection.[2]

### III. Conclusion

For these reasons, the Motion is denied.

Dated: September 2, 2025
St. Louis, Missouri
cjs

Brian C. Walsh
United States Bankruptcy Judge

---

[2] The SBA also argues that the earlier opinion improperly relied on public policy to override the plain meaning of Section 363(p)(2). In fact, I simply observed that my construction of the statute produced a result that was consistent with what one might have expected Congress to do.